IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KYLE LEIBACH,                                         CIVIL DIVISION

                Plaintiff,                         Case No. _____

    v.

ALLEGHENY GENERAL HOSPITAL,

                Defendant.

## COMPLAINT AND JURY DEMAND

A.    *Preliminary Statement*

1.    The plaintiff Kyle Leibach brings this action under the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.,* to redress violations of his right to be free from employment discrimination based upon his disability and the Family Medical Leave Act (the "FMLA"), 29 U.S.C. § 2601 *et seq.* to redress violations prohibiting adverse job action, harassment and retaliation for requesting medical leave. Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* A jury trial is demanded.

B.    *Jurisdiction*

2.    The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 12117(a), 28 U.S.C. § 1331, 29 U.S.C. § 2617(a)(2) and under the doctrine of pendant jurisdiction.

3.    On June 23, 2015, the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 553-2015-00950. This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4.    The EEOC issued a Notice of Right to Sue dated January 6, 2016.

5.      The plaintiff filed this complaint within 90 days of receipt by the plaintiff of the Notice of Right to Sue.

C.   **The parties**

6.      The plaintiff is an adult individual who resides at 228 Lend Street, Fombell, Beaver County, PA 16123.

7.      The defendant Allegheny General Hospital is an entity doing business in the Commonwealth of Pennsylvania, and, specifically, in this district.  The defendant has a place of business located at 320 East North Avenue, Pittsburgh, Allegheny County, PA 15212, which is the location where the plaintiff was employed.

8.      The defendant is a hospital.

9.      At all times material, the defendant employed more than fifteen employees.

10.     The defendant was the plaintiff's employer and is an employer within the meaning of the ADA, 42 U.S.C. § 12111(5) and the FMLA, 29 U.S.C. § 2611(4).

D.   **Factual Background**

11.     The plaintiff was hired by Allegheny General Hospital on February 22, 1988.  He was employed as a pharmacy technician from the date of his hire through his termination on May 11, 2015.

12.     The plaintiff's job duties included making chemo, dispensing narcotics and filling and delivering prescriptions for and to all 12 floors of the hospital.

13.     The plaintiff has a disability as defined by the Americans with Disabilities Act ("ADA") and/or was perceived by the employer as having a disability.  Specifically, he has been diagnosed with Type-1 Diabetes (Insulin-dependent), a physical and/or mental impairment that substantially limits one or more of the major life activities of the plaintiff.

14. The plaintiff could perform all the essential functions of his job either with or without a reasonable accommodation. During the course of his employment, the plaintiff did, in fact, perform his job in a competent fashion and was a satisfactory employee.

15. During the course of the plaintiff's employment the plaintiff's managers were aware that the plaintiff had a disability.

16. The plaintiff was subjected to discriminatory treatment during his employment because of his disability and was denied a reasonable accommodation. Specifically, Laura Mark, Director of Pharmacy, knew that the plaintiff has diabetes and knew that he would, from time to time, have to drink some orange juice and/or eat some candy to keep his insulin levels within acceptable ranges. She routinely threw away his orange juice or candy when she found it. For example, on one occasion, he put candy and orange juice in a drawer before he left the department to deliver medication. When he returned to the department, he could feel that his sugar level was very low so he went to the desk drawer and found that the orange juice and candy was gone. He asked co-workers where it went and they responded that "Laura took it." He went to her office and asked her if she moved the items. She responded, "No. I didn't move it. I threw it away." He looked through the trash can in his department and found that Mark had opened the orange juice container and dumped it out and unwrapped the candy and spilled it into the trash can. She did this at least twelve times over a period of two years.

17. On another occasion, Mark had again thrown away the plaintiff's orange juice. The plaintiff had to go to the emergency room because his blood sugar was so low that he could barely stand. As a result of this emergency room visit, the plaintiff's license was suspended for six months. The plaintiff, who lived about an hour away, had trouble finding a way to work and

had to take a couple of days off until he could make suitable arrangements. Weiloch called and threatened him with termination if he did not return soon.

18. The plaintiff brought this discriminatory and harassing conduct to the attention of Crawford in Human Resources on more than one occasion. She did not investigate his complaints and did not take any steps to correct Mark's behavior; Mark continued to search out and destroy his orange juice and candy.

19. Other employees in the department routinely brought soda and candy into the department. Mark never disposed of their items and did not otherwise discipline those employees.

20. The plaintiff applied and was approved for Family Medical Leave Act ("FMLA") leave approximately two years ago because he anticipated needing time off from time to time on an intermittent basis due to his disability.

21. Because of his diabetic condition, the plaintiff got an infection in his right foot that would not heal satisfactorily. The plaintiff had been battling the infection for almost a year. He was prescribed antibiotics; however the infection would never fully clear up and would return after the course of antibiotics was completed. As a last resort, his podiatrist prescribed a last round of antibiotics and recommended that the plaintiff schedule a surgery to have his foot amputated.

22. The plaintiff's podiatrist wrote an order excusing the plaintiff from work starting on March 31, 2015. The plaintiff turned in the order to Employee Health that same day. Further, the plaintiff called his direct supervisor, Linda Weiloch, the Pharmacy Director, and told her that he was going to need at least a couple of weeks off of work for the surgery. She consented to the plaintiff's request to be excused from work until after the surgery. Finally, the plaintiff filled out

and submitted the FMLA leave of absence forms online that day.  He also printed out the forms that his surgeon had to complete and brought them with him to his appointment.

23. The plaintiff met with his surgeon on or about April 6, 2015.  The surgery was scheduled for April 14, 2015 and the surgeon decided that he would amputate the plaintiff's big toe on his right foot; he felt that the rest of his foot could be saved.  The plaintiff gave the FMLA paperwork that his surgeon had to complete.  The office staff told the plaintiff that they would complete this portion of the paperwork and submit it directly to the employer on his behalf.

24. On April 14, 2015, while the plaintiff was being prepped for surgery, he told the staff that he was concerned that his manager would be upset if he were off of work too long.  He was assured that the surgeon's office that they would take care of the paperwork for the FMLA leave.

25. After his surgery, and while the plaintiff was recovering, Weiloch called him on more than one occasion to find out how he was doing and when he expected to return.  Weiloch never expressed any issues regarding his FMLA paperwork.

26. On or about May 22, 2015, the plaintiff received a certified letter, dated May 11, 2015, from Cynthia Moser, Director of Human Resources, notifying him that his employment was being terminated effective immediately because he did not submit completed FMLA documentation.  In pertinent part, Moser wrote as follows:

> On March 31, 2015, you applied for a leave of absence.  You were required to provide supporting documentation and required medical certification within fifteen (15) days, however you failed to do so.  The HR LOA office sent you a letter on April 2, 2015, informing you of the requirement to submit the supporting documentation, as well as a second letter on April 15, 2015.  As a result of your failure to submit the documentation, your leave request was closed on April 27, 2015.  To date,

>   you have not provided any verification for your extended absence nor have you reported to work for your scheduled shifts. Your behavior is in violation of hospital policy and Values and is considered to be abandonment of your position.

27. The plaintiff never received either of the two letters referenced in Moser's correspondence. Further, no one from Human Resources or the plaintiff's own department ever contacted him by phone to advise him that the surgeon's paperwork had not been received. Significantly, and as detailed above, Weiloch, the plaintiff's direct supervisor was in regular communication with the plaintiff during his convalescence and never once raised the issue with him.

28. The plaintiff immediately contacted his surgeon's office and was told that there must have been some confusion and the FMLA paperwork filled out by that office "must have gotten lost somewhere." The plaintiff went to the surgeon's office the next business day with another set of forms. In the plaintiff's presence, the office staff filled out the paperwork again and sent it via facsimile to the employer.

29. Despite the fact that the plaintiff had not abandoned his position and did not fail to submit the necessary paperwork, and, further, despite the fact that the plaintiff acted promptly to correct and clarify the situation, the employer refused to reinstate the plaintiff's employment. In one telephone conversation, Kelly Crawford, from Human Resources, told the plaintiff that "I have nothing to do with it. You can call someone else in Human Resources. You no longer work here." She would not take or return any further calls from the plaintiff.

30. The reason provided by the employer for the plaintiff's termination was a pretext and, in reality, the employer based its decision to terminate the plaintiff based upon the plaintiff's disability. In addition, his termination was also in retaliation for his request for FMLA time to take care of a medical condition related to his disability.

**FIRST CAUSE OF ACTION**

31. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

32. The plaintiff has a disability and thus is protected against discrimination under the ADA.

33. The plaintiff was qualified for his position.

34. The plaintiff was able to perform his job with or without a reasonable accommodation.

35. Despite his qualifications, the plaintiff was terminated. The reasons given for his discharge were a pretext.

36. The defendant's discharge of the plaintiff was because of his disability, in violation of the ADA.

37. At all times relevant, the defendant knew of the plaintiff's disability and/or regarded the plaintiff to be a disabled individual.

38. The defendant's violation of the ADA was committed with intentional or reckless disregard for the plaintiff's federally protected right to work in an environment free of discrimination.

**SECOND CAUSE OF ACTION**

39. The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

40. The defendant's managers retaliated against and terminated the plaintiff because of his request for FMLA leave.

41. The defendant's violation of the FMLA was committed with intentional or reckless disregard for the plaintiff's federally protected rights.

### THIRD CAUSE OF ACTION

42. The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

43. As a direct and proximate cause of its actions, detailed above, the defendant has violated the plaintiff's right to be free from discrimination and harassment under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.*

WHEREFORE, the plaintiff respectfully requests judgment be entered in his favor and against the defendant and that the defendant be required to provide all appropriate remedies under the ADA, the FMLA and the PHRA, including attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*
Michael J. Bruzzese
Pa. I.D. No. 63306
BRUZZESE & TEMPLE
300 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
(412) 281-8676
Counsel for the plaintiff

Dated: January 18, 2016